IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMIE L. W.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 3:23-cv-00751-JR

OPINION AND ORDER

_____

RUSSO, Magistrate Judge:

    Plaintiff Jamie W. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in December 1979, plaintiff alleges disability as of September 7, 2020, due to vertigo, autoimmune disorders, asthma, endometriosis, tachycardia, left arm nerve damage, and compartment syndrome. Tr. 377, 393. Her application was denied initially and upon reconsideration. On December 15, 2021, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 229-49. On January 26, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 212-25. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 214. At step two, the ALJ determined the following impairments were medically determinable and severe: "adjustment disorder with anxiety; vertigo; asthma; segmental and somatic dysfunction of thoracic region; and segmental and somatic dysfunction of cervical region." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id.*

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform medium work as defined by 20 C.F.R. § 404.1567(c) except she: "can occasionally climb ramps and stairs [and] stoop, kneel, crouch, and

---

[2] The record before the Court constitutes nearly 1400 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

Page 2 – OPINION AND ORDER

crawl"; "cannot climb ladders, ropes, or scaffolds"; "can have occasional concentrated exposure to atmospheric conditions as defined in the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles"; "must avoid exposure to workplace hazards such as unprotected height and operational control of moving machinery"; and "is limited to understanding and carrying out simple instructions consistent with reasoning level one or two [and] to occasional contact with the general public, coworkers, and supervisors." Tr. 216.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 223. At step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform despite her impairments, such as hand packager, industrial cleaner, and auto detailer. Tr. 224.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom statements; and (2) improperly assessing the medical opinion of reviewing source Lauren Robinson, Psy.D.

**I.    Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her vertigo. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the

Page 3 – OPINION AND ORDER

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that she was unable to work due to "severe vertigo," which she described as a "daily problem . . . triggered by noise." Tr. 236. She reported that, prior to undergoing sinus surgery in 2020, she experienced vertigo intermittently. Tr. 239. In the days following the procedure,[3] plaintiff developed "constant, severe ear pain in the right ear" and began to suffer daily episodes of vertigo. *Id.* Plaintiff further testified that, as a result of her vertigo symptoms, she is prone to losing her balance and suffers frequent physical injuries. Tr. 240.

In terms of daily activities, plaintiff stated that she cares for her ten-year-old son by preparing meals and transporting him to and from school. Tr. 237-38. Plaintiff elaborated that these activities require significant additional time to account for the possibility of a vertigo episode, are

---

[3] Plaintiff underwent turbinate reduction surgery to address bilateral inferior turbinate hypertrophy as well as complaints of chronic nasal congestion, vertigo, and headaches for a period of five months.

Page 4 – OPINION AND ORDER

"mentally exhaust[ing]," and require a subsequent period of rest to allow her to recover. *Id.* In the evening she tries to engage in activities with her son that "limi[t] the amount of noise [she's] being exposed to." *Id.*

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are inconsistent with the [RFC] assessment herein." Tr. 217. In particular, the ALJ cited plaintiff's activities of daily living and inconsistency with the medical record (including the lack of objective findings). Tr. 217-21.

Concerning the former, "[e]ven where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (superseded by statute on other grounds). Here, however, substantial evidence does not support the ALJ's reasoning.

Initially, that plaintiff continues to perform a limited range of daily activities, symptoms permitting, does not impugn her credibility. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("claimants should not be penalized for attempting to lead normal lives in the face of their limitations . . . Only if the level of activity [is] inconsistent with Claimant's claimed limitation would these activities have any bearing on Claimant's credibility").

Plaintiff's daily activities, in context, are consistent with her subjective complaints. The record reflects that plaintiff is limited to short driving trips, generally less than five miles away, and quiet tasks within the home. Tr. 403-04, 533, 536, 1036. Additionally, plaintiff's treatment providers frequently note that she appeared with a driver to assist with transportation. *See, e.g.*, Tr.

Page 5 – OPINION AND ORDER

511, 517, 536, 561, 577, 1046. Relatedly, the record indicates plaintiff's adult daughter assists her with various tasks. Tr. 546, 1036. Therefore, activities such as plaintiff's – *i.e.*, driving her son to and from school with additional time allocations to accommodate symptoms, occasionally socializing with family, performing quiet activities within the home, and shopping with ear plugs and/or assistance – are neither transferable to a work setting nor contradict claims of a totally debilitating impairment. See *Morgan v. Colvin*, 2013 WL 6074119, *5-6 (D. Or. Nov. 13, 2013) (reversing the ALJ's credibility finding under analogous circumstances).

The ALJ's second proffered reason is based primarily on two observations: (1) that plaintiff "denied symptoms of nausea, vomiting, or pulsing, throbbing, or pounding pain with vertigo episodes"; and (2) "[t]he record has not [shown that plaintiff] required emergency department or urgent care treatment for an exacerbation of vertigo symptoms or uncontrolled symptoms[.]" Tr. 217.

In support of the first observation, the ALJ cites a single report, prepared by a neurologist to whom plaintiff was referred with a presumptive diagnosis of vestibular migraine in February 2021. Tr. 548-49. The neurologist quickly ruled out vestibular migraine upon examination, and most of the report is devoted to differentiating plaintiff's vertigo symptoms from the diagnostic criteria for a vestibular migraine diagnosis. Tr. 449-53. It therefore does not follow that plaintiff's statements denying migraine-associated symptoms should negate her testimony about the nature and severity of her vertigo symptoms. Notably, the same report contains various descriptions of plaintiff's vertigo episodes, including "pounding" or "sharp" pain, "pressure," and "popping in the right ear." *Id.*; *see also Ellefson v. Colvin*, 2016 WL 3769359, *4 n.3 (D. Or. July 14, 2016) (isolated reference in the record "does not constitute substantial evidence"); *Reddick*, 157 F.3d at

722-23 (ALJ's "paraphrasing of record material" that is "not entirely accurate regarding the content and tone of the record" does not support an adverse credibility finding).

Regarding the ALJ's second observation, the fact that plaintiff has not sought emergent or urgent treatment for a chronic health problem does not undermine her hearing testimony, especially given that the record reflects significant care associated with her noise-induced vertigo. Cf. *Cortes v. Colvin*, 2016 WL 1192638, *4 (C.D. Cal. Mar. 28, 2016) ("an ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate") (citation and internal quotations omitted); *Scott H. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4249276, *4 (D. Or. June 29, 2023) ("lack of inpatient medical care does not render claimant's mental health treatment 'conservative'") (citation and internal quotations omitted).

Finally, the ALJ concluded that "[t]he lack of more significant objective diagnostic and clinical findings suggests [plaintiff's] symptoms and limitations were not as severe as she alleged." Tr. 218. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). In other words, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ accepted the underlying impairment as medically determinable and severe at step two, and the ALJ's other reasons for rejecting the claimant's subjective symptom statements are not supported by substantial evidence. And, in any event, the fact that plaintiff's providers had not resolved the etiology of her vertigo is not a basis to discredit her testimony, especially given the overall record.

In sum, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony. The ALJ's decision is reversed in this regard.

## II.     Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the opinion Dr. Robinson, one of two state agency consulting sources. Where, as here, the claimant's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[4] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

On June 9, 2021, Dr. Robinson provided the initial review of the record and opined that plaintiff was moderately limited in the her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in

---

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

proximity to others; complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. Tr. 263-66. She left all the sections requesting a narrative explanation blank, but did expressly refer to the "PRT" section in support of her opinion. Tr. 265. The "PRT" section states, in turn:

> [The record] indicates mild to moderate mental limitations. [Plaintiff] reports sound-induced vertigo and cognitive issues; has difficulty concentrating after being around noise . . .
>
> Collectively, there are no formal [mental health] allegations. [Plaintiff] has recent [mental health treatment] secondary to vertigo and has been diagnosed with adjustment disorder with anxiety. There have been no inpatient admissions, ER visits or crisis interventions for mental problems over this time-period. Aside from some indications of frustration and tearfulness during a few [appointments], mental status findings, in general, do not indicate anything atypical with regard to behavior, thought process/content, insight/judgment, or cognitive function. [Plaintiff] demonstrates an ability to independently give and receive information, and manage healthcare relationships. [Plaintiff] also appears to follow through with [treatment] recommendations, as well as conduct themself in an appropriate manner. Across [appointments], neither the [mental health] treatment source nor [plaintiff] expresses concern for marked deficits or changes in mental/cognitive capabilities. [Plaintiff] does not receive a level of collateral support or mental health treatment that is usually associated with chronic or debilitating mental illness.
>
> [Plaintiff's] ability to interact appropriately [with treatment] sources . . . along with ability to follow treatment plan, and perform [activities] support intact adult functional capacity over time, across a range of activities and situations . . . These abilities are consistent with the capacity for work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct, and concrete.

Tr. 258-59.

The ALJ "was persuaded" by Dr. Robinson's opinion that plaintiff "would be capable of performing an unskilled range of work with moderate limitations in interacting with the general public." Tr. 222. The ALJ found the Dr. Robinson's mental limitations were "generally consistent" with the record, explaining:

Page 9 – OPINION AND ORDER

> the evidence showed [plaintiff] presented [for] treatment for complaints of anxiety and depression symptoms related to her ongoing physical health problems in June 2021 and initial examination showed evidence of anxious mood and affect. For these reasons, the determination that [plaintiff] would be limited to an unskilled range of work and would have social functioning limitations was well supported by findings from early examinations by treatment providers. However, the record did not support more restrictive limitations, as treatment records showed in September and October 2021 [that plaintiff] began to benefit from treatment and examinations showed improvement in mood and affect and that she was calm and cooperative and maintain[ed] good eye contact during examinations. Accordingly, the determinations of the State agency consultant took into account [plaintiff's] ongoing adjustment disorder symptoms, but the record did not support more restrictive functional limitations than those assessed herein.

*Id.*

As a preliminary matter, plaintiff ignores the narrative portion of Dr. Robinson's report. *See* Pl.'s Opening Br. 18 (doc. 10) (arguing only that "the [ALJ's] RFC fails to accommodate the various moderate limitations identified in Dr. Robinson's opinion beyond the 'moderate limitations interacting with the general public'"). Yet "it is the narrative written by the psychiatrist or psychologist" and "not the broad terms, such as 'moderately limited,' in areas of functioning. . . that adjudicators are to use as the [basis of the] RFC." *Snider v. Berryhill*, 2018 WL 344973, *4 (D. Or. Jan. 9, 2018) (citation and internal quotations omitted); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) ("an ALJ's assessment of a claimant adequately captures [moderate limitations] where the assessment is consistent with restrictions identified in the medical testimony"). Stated differently, plaintiff does not point to any concrete functional limitations assessed by Dr. Robinson that the ALJ rejected (wrongfully or otherwise).

Furthermore, the fact that the ALJ did not use Dr. Robinson's precise terminology is not grounds for reversal where, as here, the RFC comports with the provider's narrative assessment. *See Devin B. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 3072488, *7 (D. Or. Apr. 25, 2023) ("it is the responsibility of the ALJ, not the claimant's physician, to determine [the RFC] and the ALJ's

findings of RFC need not correspond precisely to any physician's finding") (citation and internal quotations omitted); *see also Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (ALJ may incorporate a medical opinion by assessing RFC limitations consistent with, but not identical to, those assessed by the doctor). The ALJ's decision is upheld as to this issue.

### III.    RFC and Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error in evaluating plaintiff's subjective symptom statements surrounding the extent of her vertigo symptoms. As a result of this error, plaintiff requests that "this matter be remanded for further administrative proceedings." Pl.'s Opening Br. 19 (doc. 10). The Court agrees that further proceedings would be useful, such that remanding for the immediate payment of benefits is improper.

On one hand, it is undisputed that plaintiff's vertigo is longstanding and has persisted at significant levels despite the introduction of numerous diagnostic measures and treatments. On the other hand, it is unclear what role plaintiff's mental impairments played in the physical manifestation of vertigo. It is also unclear the extent to which plaintiff's symptoms could be managed by a quiet environment and/or avoidance of triggers in a workplace. *See, e.g.*, Tr. 519 (plaintiff noting in January 2021 "that [her] symptoms did let up a bit when she had a few quiet days when her son wasn't home"), 548 (plaintiff reporting in February 2021 that her vertigo "[s]ymptoms are provoked by sneezing or blowing her nose, and by high-pitched tones (but not loud noises) [and] which will resolve if her ear pops, or if she can remove herself from the source of the high-pitched noise").

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the complex and longstanding nature of plaintiff's vertigo, the use of a medical expert and/or consultative examiner would be helpful. Therefore, upon remand, the ALJ must seek out a consultative examination or medical expert to review the record and opine as to plaintiff's functional abilities and, if necessary, reweigh the medical and other evidence, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 1st day of April, 2024.

                                          /s/ Jolie A. Russo
                                             Jolie A. Russo
                              United States Magistrate Judge